**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MIKE VAUGHN CUSTOM SPORTS,**
**INC., a Michigan corporation**

      **Plaintiff,**　　　　　　　　　　**Civil Action No.: 12-CV-13083**

      vs.　　　　　　　　　　　　　**District Judge David M. Lawson**

　　　　　　　　　　　　　　　　**Magistrate Judge Mona K. Majzoub**

**CHRYSTEM "CHRIS" PIKU, an**
**individual, PIKU MANAGEMENT CO.**
**d/b/a WORLDPRO GOALTENDING -**
**USA, a Michigan corporation, and**
**DENNIS DOMBROWSKI, an individual**

      **Defendants.**

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO COMPEL [28], GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [32], AND GRANTING DEFENDANTS' MOTION TO COMPEL [40]**

This matter comes before the Court on Defendant Chrystem "Chris" Piku and Piku Managements' (the Piku Defendants) Motion to Compel Discovery (docket no. 28) and Motion to Compel Deposition (docket no. 40) and Plaintiff Mike Vaughn Custom Sports, Inc's Motion to Compel Discovery and to Compel Deposition of Chrystem Piku (docket no. 32). Plaintiff filed Responses to each of the Piku Defendants' Motions (docket nos. 31 and 42), and the Piku Defendants filed Replies (docket nos. 35 and 45). The Parties also filed a Joint Statement of Resolved and Unresolved Issues with regard to the Piku Defendants' Motion to Compel Discovery. (Docket no. 37.) The Piku Defendants did not respond to Plaintiff's Motion, but the parties did file a Joint Statement of Resolved and Unresolved Issues related to the same, in which Defendants set forth their "position" on this Motion. (Docket no. 38.) The motions have been referred to the

undersigned for consideration. (Docket nos. 29, 33, and 42.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.     Background**

Since 1983, Plaintiff has designed, manufactured, and sold custom goaltender equipment to hockey players at all levels, including goalies in the National Hockey League (NHL). (Docket no. 36-1 at 3[1].) For over 20 years, Defendant Dombrowski worked for Plaintiff in various capacities, including as a production manager from January 2001 through November 2010. (*Id.*) Defendant Chris Piku is the owner/operator of Piku Management, which ran "Worldpro Goaltending - USA," a goaltender training school and served as a retail outlet for Plaintiff's goaltender equipment from January 2009 through September 2010. (*Id* at 3-4.)

Plaintiff alleges that "Defendants act[ed] individually and in concert with one another to misappropriate Vaughn Sports' confidential business information and trade secrets, to copy Vaughn Sports' product designs and trade dress for their own use and economic advantage, and to develop and put into the stream of commerce 'knock off' hockey goaltender products that are virtually identical to, and that are derived from, Plaintiff's proprietary and confidential business information and property." (*Id.* at 5.) Plaintiff notes that it terminated the Piku Defendants' sales-agency relationship for various reasons. (*Id.* at 10-11.) But Plaintiff's specific allegations against the Piku Defendants in this matter include (1) "surreptitiously" entering Plaintiff's manufacturing facility (with Defendant Dombrowski's assistance) to inspect products and equipment; (2) copying "know-

---

[1] Plaintiff's First Amended Complaint is attached to its Motion for Leave to File the same. (Docket no. 36.) In an August 15, 2013 Order, the Court, having previously granted Plaintiff's Motion for Leave to File, deemed that Plaintiff's First Amended Complaint was filed as of August 12, 2013. (Docket no. 41.)

how on the machinery, tools, process and procedures necessary to manufacture goal equipment," and Plaintiff's "trade dress and product designs, all for their own wrongful use and economic benefit;" and (3) contacting Plaintiff's customers and prospective customers for the sale of Piku custom goalie equipment (which Plaintiff contends were "knock-off" Vaughn products).[2] (*Id.* at 11-14.) Plaintiff's claims against the Piku Defendants include Trade Dress Infringement (Count I), Trademark Dilution (Count II), False Designation of Origin (Count III), Trade Dress Dilution (Count IV), Common Law Unfair Competition and Trade Dress Infringement (Count V), violations of the Michigan Uniform Trade Secrets Act (Count VI), Breach of Duty of Loyalty (Count IX), Breach of Fiduciary Duty (Count X), Business Defamation (Count XI), Intentional Interference with Contract and Business Advantage (Count XII), and Civil Conspiracy (Count XIII). (*Id.* at 14-29.)

Plaintiff filed its initial Complaint on July 13, 2012. (Docket no. 1.) On September 21, 2012, Plaintiff served on the Piku Defendants Plaintiff's First Set of Interrogatories (docket no. 32-2) and Plaintiff's First Request for Production of Document (docket no. 32-3). The sufficiency of the Piku Defendants' responses are at issue in Plaintiff's Motion to Compel. (Docket no. 32.) The Court held a status conference on November 26, 2012, at which time the Parties discussed various discovery issues. (*See* docket no. 31 at 3.) On December 10, 2012, the Piku Defendants served Plaintiff with Defendants' First Set of Interrogatories (docket no. 28-3) and Defendants' First Set

---

[2]Although not necessary for determination of this Motion, for purposes of context, Plaintiff's specific allegations against Defendant Dombrowski include (1) his assisting another former Vaughn Sports' employee, Peter Smith, "in the establishment of [a] competing business" while Dombrowski was still employed by Plaintiff; (2) providing Plaintiff's confidential information to Smith; (3) causing Plaintiff's other employees to slow or cease production unnecessarily; (4) providing Plaintiffs' products to third parties (including the Piku Defendants) to assist them in developing competing businesses; (5) removing, or arranging for the removal of, his personnel file; and (6) stealing Plaintiff's "Vendor Book" and "Master Inventory Book," purportedly to provide the information in those books to third parties, including the Piku Defendants. (*Id.* at 6-10.)

of Request for Production of Documents (docket no. 28-4). The sufficiency of Plaintiff's Responses to these discovery requests are at issue in Defendant's Motion to Compel Discovery. (Docket no. 28.)

On May 6, 2013, Plaintiff noticed the deposition of Defendant Chris Piku for May 24, 2013. (Docket no. 32-16.) Included in Plaintiff's Motion to Compel, filed on June 17, 2013, is a request that the Court order Defendant Chris Piku to be produced for his deposition. (Docket no. 32.) In the Parties' Joint Statement, however, Plaintiff acknowledges that it was able to conduct the deposition on July 10, 2013. (Docket no. 38 at 2.) Nevertheless, Plaintiff contends that Mr. Piku's deposition testimony was evasive and that he failed to produce documents as required. (*Id.* at 2-4.) Thus, Plaintiff requests that the Court order Mr. Piku to produce such documents and to appear for "meaningful completion of [his] deposition." (*Id.* at 4.)

On May 17, 2013, Michael Vaughn, Vaughn's President, gave deposition testimony lasting five hours. (*See* docket no. 44-2.) Mr. Vaughn was deposed again on June 21, 2013, for another six hours. (*See* docket no. 44-3.) The Piku Defendants seek to continue Mr. Vaughn's deposition over Plaintiff's objection. (Docket no. 40.)

## II. Governing Law

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have

discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). Rule 30 allows a party to conduct a deposition of any person without leave of the Court, subject to certain exceptions. Fed.R.Civ.P. 30(a)(1). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly or if the person whose deposition is sought under Rule 30 fails to properly comply with the rule, Rule 37 provides the party who sent the discovery or noticed the deposition the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(A)(5)(a).

**III. Analysis**

    **A. The Piku Defendants' Motion to Compel Discovery [28]**

The Piku Defendants served Plaintiff with their First Set of Requests for Production of Documents and the First Set of Interrogatories on December 12, 2012. (Docket nos. 28-3 and 28-4.) Defendants contend that Plaintiff's responses were "wholly inadequate" and that "Plaintiff's Counsel has not been willing to arrange for review of documents and things . . . 'at a mutually convenient time.'" (Docket no. 28 at 6.) In support of this position, Defendants cite to two emails, sent on January 28, 2013, and May 3, 2013, from Defendants' counsel to Plaintiff's counsel asking for

various discovery materials (docket no. 28-2 at 1-2) and a letter sent from Defendants' counsel to Plaintiff's counsel on May 7, 2013, setting forth various arguments as to why Plaintiff's responses to various discovery requests are inadequate. (Docket no. 28-2 at 3.) Defendants' Motion, however, does not set forth any argument regarding why Plaintiff's responses are insufficient. Moreover, Local Rule 37.2 requires that "[a]ny discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37, shall include, in the motion itself or in an attached memorandum, a *verbatim recitation of each . . . response, and objection* which is the subject of the motion *or a copy of the actual discovery document which is the subject of the motion*." E.D. Mich. L.R. 37.2 (emphasis added). Defendants have neither included a verbatim recitation or the allegedly inadequate responses in their Motion nor have they attached the responses to their Motion. Thus, the Court could deny Defendants' Motion on procedural grounds.

Nevertheless, Plaintiff has provided a copy of its responsive documents. (Docket nos. 31-20, 30-21, and 31-22.) And although not set forth in any motion or brief until the Parties' Joint Statement filed on July 26, 2013, Defendants' argument appears to center around Plaintiff's responses to Interrogatory Nos. 4, 7, and 11, and Requests to Product Nos. 5, 6, 7, 8, 10, 11, 12, 14, 15, 17, and 21a, 21b, and 21i). (Docket no 37 at 5.) Thus, the Court could attempt to determine the substance of Defendants' arguments. Indeed, the Court has attempted to do so, but Defendants' arguments are too vague. For example, Defendants' Motion merely sets forth the applicable discovery standards and argues, generally, that "Vaughn has failed to respond to [Defendants'] requests in the manner required by the Federal Rules." (Docket no. 28 at 9.) And while somewhat more specific, Defendants' Reply brief provides "example[s]" of deficient discovery, such as Plaintiff's "refus[al] to turn over its complete financial data" or "to identify the personnel at the NHL who allegedly castigated Plaintiff for 'illegal' product as set forth in the Complaint." (*See*

docket no. 35 at 2.) These vague assertions are insufficient for the Court to meaningfully address Defendants' Motion.

Moreover, Plaintiff asserts that Defendants' counsel has ignored offers to meet and review discovery documents and product specimens; has ignored offers to visit Plaintiff's manufacturing facility; has been "out of town" on multiple occasions; has neglected to read pleadings, papers, and discovery responses before making demands for documents already produced; and has failed to follow the discovery plan agreed to by the parties and Judge Lawson. (Docket no. 31 at 4.) In support of this position, Plaintiff provides 18 email communications between Plaintiff's counsel and Defendants' counsel from October 17, 2012, through June 4, 2013, wherein Plaintiff's counsel appears to attempt to resolve some of the discovery matters at issue in the instant Motion. (*See* docket nos. 31-2 through 31-19.) For example, On February 7, 2013, Plaintiff's counsel offered Defendants' counsel an opportunity to view Plaintiff's plant following Mr. Vaughn's deposition. (Docket no. 31-5.) And on February 8, Plaintiff's counsel confirmed that he would meet with Defendants' counsel on February 12, 2013, "to go over our document production." (Docket no. 31-10.) These examples stand in stark contrast to Defendants' characterization that "Plaintiff's Counsel has not been willing to arrange for a review of documents and things" or that requests to discuss discovery issues "have been completely rebuffed." (*See* docket no. 28 at 6.) Therefore, because the Court cannot properly address Defendants' arguments with regard to the discovery matters at issue due to the lack of detail in Defendants' Motion, and because it appears that Plaintiff's counsel has worked in good faith to resolve this dispute, the Court will deny Defendants' Motion.

   **B.**   **Plaintiff's Motion to Compel Discovery and Deposition of Chris Piku [32]**

      **1.**   **Interrogatories and Requests for Production of Documents**

On September 21, 2012, Plaintiff served the Piku Defendants with its First set of Interrogatories and First set of Requests for Production. (Docket nos. 32-2 and 32-3.) Defendants responded in December 2012, and Plaintiff now asserts that Defendants' responses are "wholly inadequate." (Docket no. 32.) Defendants did not respond, but like Defendants, Plaintiff has failed to comply with E.D. Mich. L.R. 37.2. Nowhere in Plaintiff's Motion, the accompanying brief, or the myriad of attachments does Plaintiff provide the Court with a verbatim recitation of the discovery responses that it deems inadequate. Plaintiff cites to an email sent by Plaintiff's counsel discussing an allegedly improper limitation to "certain items of goalie equipment," that is, pads, catcher gloves, and blockers, as well as some allegedly missing emails and photographs. (Docket no. 32 at 4.) Other than this vague reference, however, Plaintiff leaves the Court, in Plaintiff's own words, "to guess at[] what it is [it] is purportedly asking for in the Motion." (*See* docket no. 31 at 6.)

Moreover, while Defendants failed to respond to Plaintiff's Motion, Defendants assert in the Parties' Joint Statement that either they do not have the items sought by Plaintiff, the information Plaintiff seeks was lost or destroyed, or the information sought is outside the scope of the litigation. (Docket no. 38 at 4-5.) Defendants also note that "[a]nything not yet produced which is available will be produced." (*Id.* at 5.) Therefore, because Plaintiff failed to comply with Local Rule 37.2, and because Defendants assert that they have produced or will produce all available documents, the Court will deny Plaintiff's Motion in this regard.

### 2.     Deposition of Defendant Chris Piku

From early December 2012 through the date of Plaintiff's Motion, June 17, 2013, Plaintiff appears to have attempted to schedule the deposition of Defendant Chris Piku. (*See* docket nos. 32-5 and 32-8 through 32-15.) Plaintiff's Motion sought an order compelling Mr. Piku to appear at his

deposition, but the Parties note in their Joint Statement that Plaintiff was able to conduct Mr. Piku's deposition on July 10, 2013. (Docket no. 38 at 2.) Nevertheless, Plaintiff contends that Mr. Piku produced no documents, product samples, or computer hard-drive information, despite having been commanded to do so in the Notice of Deposition. (*Id.* at 2-3.) Further, Plaintiff asserts that Defendant gave vague and evasive answers to a number of questions that he should have been able to answer. (*Id.* at 3-4.) Plaintiff does not appear to respond to these allegations. (*Id.* at 4-5.)

Plaintiff makes a new request in the Parties' Joint Statement; that is, Plaintiff requests that the Court order a continued deposition of Mr. Piku rather than an initial deposition. (*Compare* docket no. 32, *with* docket no. 38.) The Court will grant Plaintiff's Motion for two reasons. First, Defendants failed to respond to Plaintiff's initial motion, which makes Plaintiff's motion unopposed; and when given an opportunity to address Plaintiff's supplemental request in the Parties' Joint Statement, Defendants again failed to respond adequately. Second, accepting Plaintiff's account of Mr. Piku's deposition as accurate in light of Defendants' failure to contest the same,[3] the Court finds that Mr. Piku's evasive answers and his failure to produce documents was akin to failing to answer entirely. *See* Fed.R.Civ.P. 37(a)(4). Therefore, in light of the Court's broad discretion in discovery matters, the Court will order Defendant Chris Piku to attend a second deposition at a time mutually convenient for counsel in this matter; Mr. Piku must, however, make himself available for his deposition within 21 days of this Order. Additionally, the Court will order Mr. Piku to produce, at the time of his deposition, any and all documents that he was ordered to produce in his initial deposition notice.

### C. The Piku Defendants' Motion to Compel Deposition [40]

As noted, on May 17, 2013, Michael Vaughn, Vaughn's President, gave deposition testimony

---

[3] Notably, neither party attached a transcript of Mr. Piku's deposition.

lasting five hours. (*See* docket no. 44-2.) This deposition was conducted by Defendant Dombrowski's attorney; the Piku Defendants' counsel was present. (*See id.*) Mr. Vaughn was deposed again on June 21, 2013, for another six hours. (*See* docket no. 44-3.) The first 45-minute portion of his deposition on June 21, 2013, was conducted by Defendant Dombrowski's attorney; the Piku Defendants' counsel began questioning Mr. Vaughn and continued for approximately 4.5 hours. (*See* docket no. 40 at 7.) The Piku Defendants seek to continue Mr. Vaughn's deposition for a third day over Plaintiff's objection. (Docket no. 40.)

Rule 30(d)(1) limits a deposition to one day of seven hours unless additional time is needed to fairly examine the deponent. Fed. R. Civ. P. 30(d)(1). Plaintiff asserts that Mr. Vaughn has already given more than 11 hours of deposition testimony and that any further testimony is unnecessary. (Docket no. 44 at 7.) Moreover, Plaintiff argues, the Piku Defendants' counsel was unnecessarily rude to Mr. Vaughn during his deposition, including raising his voice at the witness, cutting the witness off during his answers, and telling Mr. Vaughn that his products were "crappy." (*See* docket. No. 44 at 2.) Defendants argue that the two depositions, that is, Defendant Dombrowski's deposition of Mr. Vaughn and the Piku Defendants' Deposition of Mr. Vaughn, were separate depositions for purposes of Rule 30(d)(1). Thus, Defendants assert, they have only deposed Mr. Vaughn for a total of roughly five hours. (Docket no. 45 at 2.) The Piku Defendants do not address Plaintiff's allegations of harassment by their counsel.

Although the final pages of the deposition transcript provided by Plaintiff show Defendants' counsel stating that Plaintiff's counsel "has refused to continue this deposition," the lack of any pages leading up to this statement leaves the court to speculate as to whether such refusal was based on Defense counsel's conduct, the time that Mr. Vaughn had already spent testifying, or both. (*See* docket no. 44-3 at 5.) Nevertheless, in light of the nature and scope of Plaintiff's claims, because

the Piku Defendants' counsel did not actively participate in the deposition conducted by Defendant Dombrowski's attorney, and because the Court finds that the Piku Defendants need additional time to fairly examine Mr. Vaughn, the Court will grant Defendants' Motion. The Court will, however, limit the scope and manner of Mr. Vaughn's continued deposition as follows:

    a.    Defense counsel's questioning of Mr. Vaughn during the continued deposition will be limited to four hours, excluding any breaks;

    b.    Mr. Vaughn's deposition must be conducted at a time and place convenient for Mr. Vaughn and his counsel, including Plaintiff's plant in Oxford, MI,[4] within 30 days of this Order, provided however, that such time and place may not be unreasonably burdensome to defense counsel, including Mr. Dombrowski's counsel should he wish to attend; and

    c.    Plaintiff's counsel will be permitted to discontinue the deposition if defense counsel engages in any harassing conduct.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel [28] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery and Deposition of Chris Piku [32] is **GRANTED IN PART** and **DENIED IN PART**.

    a.    Plaintiff's Motion to Compel Discovery materials is Denied.

    b.    Plaintiff's Motion to Compel Defendant Chris Piku's deposition is granted. Mr. Piku is ordered to appear at a deposition within 21 days of this order at a time mutually convenient for the parties and their respective counsel. Mr.

---

[4]Notably, holding Mr. Vaughns deposition at the Oxford, MI plant will, as suggested by Plaintiff, provided defense counsel with a convenient opportunity to inspect the plant, as was apparently requested in Defendants' discovery requests.

    Piku is further ordered to produce at the time of this deposition any and all documents that he was ordered to produce in his initial deposition notice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel [40] is **GRANTED**.[5] Michael Vaughn is hereby ordered to appear for a continued deposition by the Piku Defendants within 30 days of this order subject to the following limitations:

 a. Defense counsel's questioning of Mr. Vaughn during the continued deposition is limited to four hours, excluding any breaks;

 b. Mr. Vaughn's deposition must be conducted at a time and place convenient for Mr. Vaughn and his counsel, provided however, that such time and place may not be unreasonably burdensome to defense counsel, including Mr. Dombrowski's counsel should he wish to attend; and

 c. Plaintiff's counsel is permitted to discontinue the deposition if defense counsel engages in any harassing conduct.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated:  October 29, 2013   s/ Mona K. Majzoub
             MONA K. MAJZOUB
             UNITED STATES MAGISTRATE JUDGE

---

[5] Having granted Defendant's Motion to Compel, in general, the Court "must . . . require [Plaintiff or its attorney] to pay [Defendants'] reasonable expenses." Fed. R. Civ. P. 37(a)(5). Nevertheless, the Court "must *not* order this payment if . . . (ii) the opposing party's [position] was substantial justified." *Id.* The Court finds that Plaintiff's arguments were substantially justified in light of defense counsel's conduct and the 11 hours of testimony already given by Mr. Vaughn. Therefore, the Court will not order payment of expenses.

**PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: October 29, 2013        s/ Lisa C. Bartlett
                               Case Manager