## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

MIKE VAUGHN CUSTOM SPORTS, INC.,
a Michigan corporation,

       Plaintiff,

v

CHRYSTEM "CHRIS" PIKU, an individual, PIKU
MANAGEMENT CO. d/b/a WORLDPRO
GOALTENDING - USA, a Michigan corporation,
DENNIS
DOMBROWSKI, an individual, and FACTORY
MODIFICATION AND DESIGN, LLC, a Michigan
limited liability company,

       Defendants.

CASE No: 2:12-cv-13083-DML-MKM

Hon. David M. Lawson

Magistrate Judge Mona K. Majzoub

FOSTER, SWIFT, COLLINS AND SMITH, P.C.
Brian J. Renaud (P34987)
Attorneys for Plaintiff
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
(248) 539-9900
Brenaud@fosterswift.com

Daryle Salisbury (P19852)
Attorney for Defendant Dennis Dombrowski
and
Factory Modification and Design, LLC
24191 Westmont Court
Novi, MI 48374
T:  (248) 348-6820
darylesalisbury@att.net

THE WEINTRAUB GROUP, P.L.C.
Arnold S. Weintraub (P22127)
Co-counsel for Defendants, Chrystem
"Chris" Piku, and Piku Management Co. d/b/a
WorldPro Goaltending-USA
24901 Northwestern Highway, Suite 311
Southfield, MI 48075
T: (248) 809-2005
F: (248) 966-8405
Aweintraub@weintraubgroup.com

ELANA WEINTRAUB GLOETZNER PLC
Elana H. Gloetzner (P62997)
Co-counsel for Defendants, Chrystem
"Chris" Piku, and Piku Management Co. d/b/a
WorldPro Goaltending-USA
24901 Northwestern Highway, Suite 311
Southfield, MI 48075
T: (248) 945-0902
F: (248) 945-1899
Elana@wgplc.com

## PLAINTIFF'S RESPONSE TO
## THE PIKU DEFENDANTS' MOTION MADE PURSUANT
## TO FED. R. CIV. PROC. 50 AND TO
## THE PIKU DEFENDANTS' MOTION TO STRIKE TESTIMONY OF
## EXPERT WITNESS JAMES BERGER

1

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

NOW COMES Plaintiff Mike Vaughn Custom Sports, Inc., ("Vaughn Sports" or "Plaintiff"), by and through its undersigned counsel, and requests that the Court deny Defendants Chrystem Piku and Piku Management Co. d/b/a WorldPro Goaltending-USA's (collectively the "Piku Defendants") Motion made pursuant to Fed. R. Civ. Proc. 50 after the close of Plaintiff's trial proofs, and that it deny the Piku Defendants' Motion to Strike the Testimony of Expert Witness James Berger, for the reasons set forth in the supporting Brief which accompanies this Response, which is here incorporated by reference.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

By:  /s/ Brian J. Renaud
Brian J. Renaud (P 34987)
Attorneys for Plaintiff
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
(248) 539-9900
BRenaud@FosterSwift.com

September 7, 2014

52613:00005:2000308-1

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MIKE VAUGHN CUSTOM SPORTS, INC.,
a Michigan corporation,

      Plaintiff,

v

CHRYSTEM "CHRIS" PIKU, an individual,
PIKU MANAGEMENT CO. d/b/a
WORLDPRO GOALTENDING - USA, a
Michigan corporation, DENNIS
DOMBROWSKI, an individual, and
FACTORY MODIFICATION AND
DESIGN, LLC, a Michigan limited liability
company,

      Defendants.

CASE No: 2:12-cv-13083-DML-MKM
Hon. David M. Lawson

Magistrate Judge Mona K. Majzoub

FOSTER, SWIFT, COLLINS AND SMITH, P.C.
Brian J. Renaud (P34987)
Attorneys for Plaintiff
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
(248) 539-9900
Brenaud@fosterswift.com

THE WEINTRAUB GROUP, P.L.C.
Arnold S. Weintraub (P22127)
Co-counsel for Defendants, Chrystem
"Chris" Piku, and Piku Management Co. d/b/a
WorldPro Goaltending-USA
24901 Northwestern Highway, Suite 311
Southfield, MI 48075
T: (248) 809-2005
F: (248) 966-8405
Aweintraub@weintraubgroup.com

Daryle Salisbury (P19852)
Attorney for Defendant Dennis Dombrowski
and Factory Modification and Design, LLC
24191 Westmont Court
Novi, MI 48374
T: (248) 348-6820
darylesalisbury@att.net

ELANA WEINTRAUB GLOETZNER PLC
Elana H. Gloetzner (P62997)
Co-counsel for Defendants, Chrystem
"Chris" Piku, and Piku Management Co. d/b/a
WorldPro Goaltending-USA
24901 Northwestern Highway, Suite 311
Southfield, MI 48075
T: (248) 945-0902
F: (248) 945-1899
Elana@wgplc.com

# PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO PIKU DEFENDANTS' MOTION MADE PURSUANT TO FED. R. CIV. PROC. 50 AND TO THE PIKU DEFENDANTS' MOTION TO STRIKE TESTIMONY OF EXPERT WITNESS JAMES BERGER

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

# <u>TABLE OF CONTENTS</u>

<u>INDEX OF AUTHORITIES</u>......................................................................................... ii

<u>ISSUES PRESENTED</u>................................................................................................. iii

<u>ARGUMENT</u> ................................................................................................................1

I.    Defendants' Rule 50 Motion as to Count III of Plaintiff's Amended Complaint
(False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A)) Should Be Denied..........1

II.   Defendants' Rule 50 Motion as to Count IX of Plaintiff's First Amended
Complaint (Breach of Duty of Loyalty – Piku and Piku Management) Should Be
Denied ........................................................................................................................8

III.   Defendants' Rule 50 Motion as to Count X of Plaintiff's First Amended
Complaint (Breach of Fiduciary Duty – Defendants Piku and Piku Management)
Should Be Denied .....................................................................................................12

IV.   The Piku Defendants' Motion To Stike the Testimony of Expert Witness James
Berger Should Be Denied ........................................................................................16

V.   The Michigan Uniform Trade Secrets Act, MCL 445.1901, et seq, Does Not
Preempt Plaintiff's Unfair Competition Claims Against the Piku Defendants..................17

<u>CONCLUSION</u>.............................................................................................................19

─FOSTER SWIFT COLLINS & SMITH PC ‖ ATTORNEYS─

i

# INDEX OF AUTHORITIES

**Cases**

*Burton v. Burton*, 332 Mich. 326, 51 N. W. 2d 297 (1952) ........................................................ 9

*Calhoun County v. Blue Cross Blue Shield Michigan,* 297 Mich App 1, 20, 824 NW2d 202, 213 (2012) ........................................................................................................ 13

*Consumers Union of the US v. New Regina Corp.,* 664 F. Supp. 753, 764 n.12 (SD NY 1997) .... 1

*H.J. Tucker & Assoc, Inc.. v. Allied Chucker & Engineering Co.,* 234 Mich App 550, 574, 595 NW2d 176, 188 (1999) .......................................................................................... 13

*Hayes-Albion v., Kuberski,* 421 Mich 170, 187 (1984) .............................................................. 14

*Johnson v. Jones, 149 F.3d 494, 502* (6th Cir. 1998) .................................................................. 1

*LA Young Spring & Wire Co., v. Fall,* 307 Mich 69, 106-107, 11 NW2d 329 (1943) ................. 14

*Lube USA Inc. v. Michigan Mfrs. Serv. Inc.,* 2009 WL 2777332, at *8 (E.D. Mich. August 27, 2009) ............................................................................................................... 17

*Pikes Peak Co. v. Pfunter,* 158 Mich 412, 416, 123 NW 19, 20-21 (1909) ................................. 14

*Portage Aluminum Co. v. Kenwood National Bank,* 106 Mich App 290,294, 307 NW2d 761 (1981) ............................................................................................................... 12

*Processed Plastics Co. v. Warner Communications, Inc.,* 675 F.2d 852, 858 (7th Cir. 1982) ...... 8

*Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235 (1935) ............................................................... 9

*Silberstein v. Pro-Golf of America, Inc., 278* Mich App 446,458, 750 NW2d 615, 624 (2008).. 14

*Sweeney & Moore v. Chapman, 295 Mich 360,363, 294 NW 711 (1940)* .................................. 13

*U.S. v. Marroso,* 250 F. Supp. 27 (E.D. Mich. 1966) ................................................................... 9

*United Rentals (N. Am.), Inc. v. Keizer, 202 F.Supp. 2d 727, 743* (WD Mich 2002) ................. 13

*VanKoevering v. Manufacturers Life Ins. Co.,* 234 F. Supp. 786 (W.D. Mich. 1964) ................. 9

*Vicencio v. Ramirez,* 211 Mich App 501,508, 536 NW2d 280, 284 (1995) ................................ 14

*Waun v. Universal Coin Laundry,* 2006 WL 2742007 (Mich App 2006) *unreported per curiam* 13

*Wesley-Jensen Div. of Schering Corp v. Bausch & Lomb, Inc.*, 698 F. 2d 862 (7th Cir. 1983) ...... 8

*Wysong Corp. v. M.I. Industries, Inc.*, 412 F. Supp. 2d 612, 623- 624 (E. D. Mich. 2005).. passim

**Other Authorities**

15 U.S.C § 1125(a)(1)(A) ............................................................................................................ 1

Mich. Comp. Laws § 445.1908(1) ............................................................................................... 17

Michigan Uniform Trade Secrets Act, MCL 445.1901 ................................................... 17, 18, 19

–FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS–

## ISSUES PRESENTED

1.      Whether the Piku Defendants' Motion made pursuant to Fed. R. Civ. Proc. 50 as to Count III of Plaintiff's First Amended Complaint (False Designation of Origin Under 15 USC §1125 (a)(1)(A)) should be denied, where Plaintiff has established at trial facts evidencing Defendants' false designation of the origin of Defendants' ice hockey goalie products and the confusion of the public and others resulting therefrom, sufficient for submission of the issue to the jury?

Plaintiff says yes.

2.      Whether the Piku Defendants' Motion made pursuant to Fed. R. Civ. Proc. 50 as to Count IX of Plaintiff's First Amended Complaint (Breach of Duty of Loyalty) should be denied, where Plaintiff has established at trial facts evidencing the Piku Defendants' duty of loyalty to Plaintiff arising from their agency relationship with Plaintiff and the breach thereof, sufficient for submission of the issue to the jury?

Plaintiff says yes.

3.      Whether the Piku Defendants' Motion made pursuant to Fed. R. Civ. Proc. 50 as to Count X of Plaintiff's First Amended Complaint (Breach of Fiduciary Duty) should be denied, where Plaintiff has established at trial facts evidencing the Piku Defendants' fiduciary duty to Plaintiff and the breach thereof, sufficient for a reasonable jury to find in Plaintiff's favor on the issue?

Plaintiff says yes.

4.      Whether the Piku Defendants' Motion To Strike the Testimony of Expert Witness James Berger should be denied, where the Defendants have had the witness' expert report and survey in their possession for over fourteen (14) months and never once raised any objection to either the report or the survey, where the testimony of the witness is relevant to the documented public confusion that resulted from Defendants having put into operation their plan to market ice hockey goalie products that contained or were based on Plaintiff's confidential business information and trade secrets,  where the survey conducted and then interpreted by the witness at trial established a high degree of confusion of Defendants' ice hockey goalie products with those of Plaintiff's, and where the showing of ice hockey goalie product graphics on the specimen products shown to survey

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

participants was testified to by the witness as having been a necessary element of the survey?

Plaintiff says yes.

—FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS—

## ARGUMENT

**I.    Defendants' Rule 50 Motion as to Count III of Plaintiff's Amended Complaint (False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A)) Should Be Denied**

15 U.S.C § 1125(a)(1)(A) imposes liability on any person who, or in connection with any goods or services, uses in commerce any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of his or her goods or services.

In order to prevail on its claim that the Piku Defendants are liable for False Designation of Orgin Under 15 U.S.C. §1125(a)(1)(A), Plaintiff must prove: (1) the false designation had an effect on interstate commerce; and (2) the false designation created a likelihood of confusion in the consuming public.[1]   A description of origin will be considered false if it creates a likelihood of confusion in the consuming public.[2]

The trial record in the instant case is replete with evidence that the Piku Defendants falsely designated to the public the origin of, and other purported facts concerning, their competing ice hockey goalie products, pursuant to a common manufacturing and marketing plan entered into between the Piku Defendants and the Dombrowski Defendants before their respective affiliations with Vaughn Sports were

---

[1] *Consumers Union of the US v. New Regina Corp., 664 F. Supp. 753, 764 n.12 (SD NY 1997).*

[2] *Johnson v. Jones, 149 F.3d 494, 502 (6th Cir. 1998).*

1

terminated, and which has continued through the present. Defendants' manufacture and sale to the public of ice hockey goalie products that are based on Plaintiff's business reputation, goodwill, confidential business information and trade secrets have created public confusion. The established facts are as follows.

● The Dombrowski Defendants and the Piku Defendants testified on a number of occasions during the presentation of evidence at trial that, at all times relevant to the allegations of the First Amended Complaint, they were in an exclusive manufacturer – seller relationship with one another.

● Mr. Dombrowski testified that Mr. Piku ordered, and that Mr. Dombrowski produced, the modifications made to the ice hockey goalie knee guards manufactured by Vaughn Sports, that were admitted at trial as Plaintiff's Exhibit 10. The evidence showed that these modifications were made while Mr. Dombrowski, at least, and likely both Mr. Dombrowski and Mr. Piku, were still affiliated with Vaughn Sports. Further, that the revenue derived from the requested customer modification was not turned over to Vaughn Sports, but rather pocketed. Mr. Dombrowski in making the modifications blatantly covered up with a fabric cover the "Vaughn" brand name which had conspicuously appeared on the front of the pads, and Mr. Dombrowski failed to offer a satisfactory explanation of why, as Vaughn Sports' then current Production Manager, he did not simply re-display the Vaughn name on the pads.

● While both the Dombrowski Defendants and the Piku Defendants were still affiliated with Vaughn Sports - in fact in early 2009, just a few months after the Piku

2

Defendants became Vaughn Sports' outside retail sales agent, Mr. Piku sent directly to Mr. Dombrowski a written order for a customer identified as "Kaitlyn Allard" (Defendants' admitted Exhibit 310), requesting that, among other specified product modifications to be conducted at the Vaughn Sports plant, the name of Mr. Piku's company, "WorldPro", be embroidered on the sides of a pair of Ms. Allard's Vaughn Sports leg pads.  The embroidery was requested to be placed next to, and in fact was conspicuously placed on the leg pads next to, the "Vaughn" brand name that also appeared on the pads, thus falsely suggesting that the "WorldPro" brand was somehow affiliated with the Vaughn brand.  As noted, the order was addressed directly to Mr. Dombrowski, rather than to Mr. Dennis Doll, a Vaughn Sports employee who would ordinarily have received and processed such an order.  Mr. Dombrowski claims that he had no knowledge of receipt of the order, though he does admit that he was the Vaughn Sports Production Manager and that the requested modifications set forth in the order (supposedly except the embroidery) were made by employees under his supervision.  Mr. Vaughn testified that such an embroidery request was in all events not authorized.  It is therefore a question that can reasonably put to the jury whether the request for the placement of the WorldPro logo on the Vaughn product next to the Vaughn name, and its actual placement there, were intended to falsely designate or confuse as to the correct origin of the Defendants' product.

● The September 18, 2011 In Goal Magazine internet article concerning the Boston Bruins goalie Tim Thomas "mystery" goalie pads (Plaintiff's admitted Exhibit 4) contained multiple statements made by Mr. Piku, which statements were adopted by him

3

during his video recorded deposition played to the jury, that evidence the execution of his and Mr. Dombrowski's plan to market confusingly similar ice hockey goalie products to the buying public.  Among other things, Mr. Piku stated in the article that the Vaughn Sports-branded goalie pads that Mr. Thomas had worn during his winning 2010-2011 ice hockey season, in which Mr. Thomas had won the Stanley Cup, the Venza trophy and the Conn-Smythe award, were really goalie pads that Mr. Piku had made, and that "we" (i.e., he and his exclusive manufacturer, Dennis Dombrowski) "elected to put Vaughn covers on it because I wasn't ready to start dealing with the NHL and publicizing it".  There was testimony in the case from Mr. Vaughn that in order to place a goalie product manufacturer's name or logo on an ice hockey goalie product in NHL games, an "on ice fee" of some $75,000 per goalie product line was payable to the NHL.  Mr. Piku thus avoided this fee by placing the Vaughn name on the pads that he claimed he had made and that he claimed he had covered over with Vaughn covers, or "skins".  By making the claim that he used Vaughn skins on pads purportedly actually made by him, he generated confusion.  He confused Mr. Vaughn, and Mr. Thomas, who also testified at trial, at least.  It was also his obvious intent to confuse and deceive the NHL, as he admittedly hid from the NHL that the pads were purportedly really his, so as to avoid having to pay the NHL's on-ice fees.

●  Capitalizing on Mr. Thomas' 2010-2011 season success wearing "Vaughn" goalie pads, and on the good will that had inured to Vaughn Sports as a result of Mr. Thomas wearing the Vaughn brand during that winning season, Mr. Piku went on in the In Goal Magazine internet article to state to the readership that they "should not worry"

4

about the new, 2011-2012 season unbranded "Piku" pads that Mr. Thomas was displayed wearing in the article, because the modifications made by him to the pads were the "same" as made by him to the Vaughn-skinned Thomas pads worn by Mr. Thomas "during his record setting last season". These statements on their face are confusing as to whose pads Mr. Thomas was really wearing. They were confusing to Mr. Vaughn, who has been in the business for over 30 years and who had expected that at least the 2010-2011 Vaughn pads worn by Mr. Thomas were really his own, let alone the new "mystery" pads displayed in the article. They were also confusing to Mr. Thomas. Moreover, it was economic valuation expert Scott Hampton's testimony at trial that the association of the Vaughn Sports name with Mr. Thomas' Stanley Cup, Venza and Conn-Smythe wins in the 2010-2011 season was an extremely valuable asset. Thus, with just a few statements made in an internet magazine admittedly frequented by hockey enthusiasts, Mr. Piku, referring both to himself and to "we" (he and Dennis Dombrowski), set out to confuse and deceive the public that the originally falsely designated product, and its progeny, were really his. By way of analogy, Mr. Piku by "unveiling" the Vaughn branded Thomas pads with his "mystery pads" and then claiming that all along both sets of pads were the same and of his design, pulled off his "Pepsi Challenge". It effectively amounted to the removal of the Vaughn brand name from what the public had been led to believe was a Vaughn product.

● Mr. Piku's recorded audio interview with the In Goal Magazine reporter who wrote the September 18, 2011 internet article – in which Mr. Piku's statements were also adopted by Mr. Piku during his video recorded testimony - is likewise revealing. Among

5

other things, Mr. Piku in the interview made to the reporter the statements referred to above. He also laid out for the reporter the Defendants' business plan – i.e., that they had sold over 100 such pairs of leg pads to date (in just 10 short months since his and Mr. Dombrowski's departures from Vaughn Sports), with a goal of selling 250 pairs of such pads by 2011 year end. Mr. Vaughn, on the other hand, testified in the case that it is virtually impossible in such a short period of time for Mr. Dombrowski to have manufactured such a quantity of goalie products without the use of numerous die-cut patterns. He testified that the Defendants' ice hockey goalie products produced at trial (admitted Exhibits 5, 7-9 and 36-37) evidenced the use in them of Vaughn patterns, in addition to the existence in them of stolen Vaughn raw materials (specially sourced cord, buckles, die cut plastics, specialty leathers, etc.), as well as in the Michael Houser goalie leg pads (admitted Exhibit 6) that, at the request of Mr. Piku, were modified by Mr. Dombrowski while at Vaughn Sports. Mr. Piku further stated to the In Goal Magazine reporter that, as in the case of the 2010-2011 Vaughn-branded Tim Thomas pads, he obtained a pair of "Brian's" brand goalie pads (Mr. Vaughn testified that he is a part owner in the Brian's brand), and that for NHL goalie Ray Emery he "cut the front cover off it", "and put it on my pad". He further claimed that both "Emery and Thomas had the same [Piku manufactured] pads last year [the Stanley cup- winning 2010-2011 season], just with different covers on them." He also said "I'll probably get more notoriety by not branding them than if I do brand them so." Thus, the Defendants' multi-faceted scheme and plan to continue to manufacture and sell products that, not coincidentally, were confusingly similar to those of Vaughn's, was now out in the open.

6

● At trial, both Mr. Dombrowski and Mr. Piku (through his video recorded testimony) testified to having manufactured and sold, respectively, the many ice hockey goalie catch gloves, blocker gloves and leg pads that are depicted in the photographs identified as Plaintiff's admitted Exhibits 59-61, 63 and 69. Defendant Dombrowski confirmed during his trial testimony that the photographs were produced by the Defendants during discovery in response to discovery requests, in or about late December 2012. These photographs were provided to Plaintiff's expert witness James Berger. Some of them, in turn, were shown in Mr. Berger's product confusion survey. In the survey, participants were simply asked whose products the Defendants' (unbranded) products resembled, and they were given a range of choices, i.e., Bauer, Reebok, Vaughn, Koho, Piku, etc. The survey results were tabulated, and they showed a very high degree of participant confusion between the Defendants' products and those of Vaughn (leg pads 29% and catch glove 55%) and also between the Defendants' products and those of the Brian's brand, in which Michael Vaughn is a part owner (leg pads 30%). Mr. Berger further testified that the marketing  industry survey threshold for concluding that significant product confusion is likely is 20%. Thus, the unbranded "Piku" products, marketed just in 2012 pursuant to the Defendants' admitted joint business plan, generated a high degree of confusion among survey participants. As Plaintiff alleged in its First Amended Complaint at Paragraph 57, "Since the 2011 appearance of the purported "Piku" goalie products pictured in the attached Exhibit C, Defendants, including Defendant FMD, have greatly expanded and marketed their line of infringing products, including through internet channels". Mr. Berger's survey results help establish that fact.

7

● The Piku Defendants' claim that the "First Sale Doctrine" applies to the Vaughn-branded Tim Thomas "Piku" leg pads that were worn by Mr. Thomas during his Stanley Cup-winning 2010-2011 season. Plaintiff generally agrees that, once a product is sold, the first sale doctrine prevents a manufacturer of the product from claiming royalties or additional compensation arising from the re-sale of the product. Thus, a party can buy a new Chevy pickup truck, convert it into a "low rider", then re-sell it at a premium, owing nothing further to Chevy. But a party may not rely on the first sale doctrine to achieve an illegal result, such as here, i.e., falsely designating the origin of the product by claiming that what one plainly sees as another's product is really his. That is against public policy and void as a matter of law. Moreover, a trademark owner (such as Vaughn Sports) "has a right to insist that its reputation not be imperiled by another's actions". *Wesley-Jensen Div. of Schering Corp v. Bausch & Lomb, Inc.*, 698 F. 2d 862 (7th Cir. 1983), citing *Processed Plastics Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). Here, Vaughn Sports' reputation was harmed by Mr. Piku's misleading public claims that what was in the Vaughn Sports-branded covers was his, particularly given the fact that the Vaughn Sports products were being associated in the media at the time with a very high profile, Stanley Cup-winning goalie.

## II. Defendants' Rule 50 Motion as to Count IX of Plaintiff's First Amended Complaint (Breach of Duty of Loyalty – Piku and Piku Management) Should Be Denied

Under Michigan law, an "agent" is a business representative, whose function is to bring about, modify, affect, accept performance of or terminate contractual obligations between a principal and third persons. *Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235

8

(1935). The creation of an agency may be implied from the words and conduct of the parties and the circumstances of the particular case. *U.S. v. Marroso,* 250 F. Supp. 27 (E.D. Mich. 1966); *VanKoevering v. Manufacturers Life Ins. Co.,* 234 F. Supp. 786 (W.D. Mich. 1964). An agent is a fiduciary and owes to his principal the duty of good faith and loyalty, and the agent is under the duty to use care, skill and diligence and to obey the instructions of his principal. *Burton v. Burton*, 332 Mich. 326, 51 N. W. 2d 297 (1952). As this Court noted in *Wysong Corp. v. M.I. Industries, Inc.*, 412 F. Supp. 2d 612, 623- 624 (E. D. Mich. 2005), an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency. The law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal. *Id*. In a claim for breach of a duty of loyalty the agent or employee withholds information or conceals activity of his own when the relationship gives rise to a duty to disclose. *Id*.

In order to prevail on its claim that the Piku Defendants are liable for breach of duty of loyalty, Plaintiff must prove:

1. That the Defendant was an agent of the Plaintiff;

2. That the Defendant withheld information or concealed activity of its own which it had a duty to disclose to Plaintiff;

3. That the Defendant took actions contrary to the interests of Plaintiff and appropriated Plaintiff's business opportunities for its own benefit;

4.  That Plaintiff was damaged by the Defendant's breach of loyalty.

Mr. Piku and his company, Piku Management Co. d/b/a WorldPro Goaltending USA, were clearly agents of Vaughn Sports, engaged to properly promote to the buying public Vaughn Sports' products and product modifications.   Among other things, the evidence in the case has shown that the Piku Defendants were required by Mr. Vaughn to:

● Promote and sell Vaughn Sports products and modifications to goalies on an individual, custom basis.

● Provide industry compliant modifications to purchasers of Vaughn Sports products, some of which were to be performed at the Vaughn Sports facility, and for which Vaughn Sports was to be paid.

● Have a regular selling floor for the promotion of Vaughn Sports products and modifications.

● Conduct a business promoting Vaughn Sports products and modifications during regular business hours.

● Pay Vaughn Sports for products delivered and modifications made.

In addition, unlike an ordinary "retailer", such as Dick's Sporting Goods or Parani's Hockey World, the Piku Defendants were made privy to specific Vaughn goalie customer information through contact by Mr. Piku with Vaughn professional and collegiate goalie customer representative Scott Hughes, through direct consultations with

10

Mr. Hughes and Mr. Vaughn regarding Vaughn Sports products, through personal, in-plant fittings of, and sales to, goalie customers whom Mr. Piku, as the actual and apparent agent of Vaughn Sports had brought to the plant, and through plant visits conducted for Mr. Piku by Vaughn Sports employees.  In addition, the Piku Defendants' goalie school was financially sponsored by Vaughn Sports.  Vaughn Sports products and customer equipment modifications to Vaughn Sports products were to be promoted there.

Contrary to their obligations and fiduciary duties to Vaughn Sports, the Piku Defendants, on their own behalf and acting in conjunction with Dennis Dombrowski:

● Ordered and made modifications to the goalie knee pads marked as Exhibit 10, on which the Vaughn name had been covered over with the Piku Defendants' "signature" unbranded cover, while still engaged by Vaughn Sports.

●    Ordered and collected money for modifications made to Vaughn Sports equipment, while Dennis Dombrowski was still a Vaughn Sports manager, which modifications had not authorized by Vaughn Sports – i.e., the Houser leg pads (admitted Exhibit 6).

● While the Defendants were still engaged by Vaughn Sports, conducted with Dennis Dombrowski an unauthorized and undisclosed side business of making modifications to amateur hockey goalie player equipment, for profit, which modifications were refused to be made or allowed by Vaughn Sports because they were not up to Vaughn Sports standards.

11

● Caused the "WorldPro" name to be affixed to Vaughn Sports goalie equipment early in the Vaughn Sports-Piku agency relationship, in an attempt to capitalize on the Vaughn Sports name, without disclosure of the same to Michael Vaughn.

● Falsely claimed to amateur goalie customers that certain, exorbitantly priced modifications to their equipment had been required by Vaughn Sports.

In consequence of at least some of these actions, i.e., those of which Vaughn Sports had at the time had been made aware, Vaughn Sports terminated the Piku Defendants' agency relationship.

The Piku Defendants' claim that, under the circumstances, they were not agents to the buying public of Vaughn Sports products and modifications, is spurious.

### III.    Defendants' Rule 50 Motion as to Count X of Plaintiff's First Amended Complaint (Breach of Fiduciary Duty – Defendants Piku and Piku Management) Should Be Denied

A fiduciary relationship arises out of the relation existing between two persons of such a character that each must place trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.[3] Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, **(3) when one person has a duty to act**

---

[3] *Wysong Corp. v. M.I. Industries,* 412 F.Supp. 2d 612, 632 (ED Mich 2005), 2005 US LEXIS 40125; *Portage Aluminum Co. v. Kenwood National Bank,* 106 Mich App 290,294, 307 NW2d 761 (1981).

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

**for or give advice to another on matters falling within the scope of the relationship,** or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.[4] A fiduciary relationship is not formed simply because a business relationship exists.[5]

Under principles of agency, an agent owes his principal a duty of good faith, loyalty, and fair dealing.[6] An agent of a principal owes a fiduciary obligation to the principal not to appropriate the opportunity of the principal for his own benefit.[7] The law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal.[8] A person who undertakes to act as an agent for another may not pervert his authority for his own personal ends and purposes without the consent of the principal after a full disclosure of all the details of the transaction.[9] Among an agent's fiduciary duties to his principal is the duty to not compete

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

---

[4] *Calhoun County v. Blue Cross Blue Shield Michigan,* 297 Mich App 1, 20, 824 NW2d 202, 213 (2012).

[5] *Waun v. Universal Coin Laundry,* 2006 WL 2742007 (Mich App 2006) *unreported per curiam.*

[6] *Wysong, supra,* at 633; *H.J. Tucker & Assoc, Inc.. v. Allied Chucker & Engineering Co.,*234 Mich App 550, 574, 595 NW2d 176, 188 (1999).

[7] *United Rentals (N. Am.), Inc. v. Keizer, 202 F.Supp. 2d 727, 743* (WD Mich 2002).

[8] *Sweeney & Moore v. Chapman, 295 Mich 360,363, 294 NW 711 (1940).*

[9] *Wysong, supra,* at 624;

with the principal on his own account or for another in matters relating to the subject matter of the agency.

A breach of fiduciary duty occurs when a fiduciary relationship has been abused or confidence has been entrusted and betrayed.[10] An agent cannot take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense.[11] If an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary character, his is accountable to his employer for the profit made.[12]

When a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary. If the third person makes a profit through such participation, he is chargeable as a constructive trustee of the profit so made.[13] **One who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes liable with him for the profits of the enterprise.[14]**

---

[10] *Wysong, supra,* at 624; *Vicencio v. Ramirez,* 211 Mich App 501,508, 536 NW2d 280, 284 (1995).

[11] *Pikes Peak Co. v. Pfunter,* 158 Mich 412, 416, 123 NW 19, 20-21 (1909).

[12] *Silberstein v. Pro-Golf of America, Inc., 278* Mich App 446,458, 750 NW2d 615, 624 (2008).

[13] *Hayes-Albion v., Kuberski,* 421 Mich 170, 187 (1984).

[14] *Hayes-Albion, supra* at 187; *LA Young Spring & Wire Co., v. Fall,* 307 Mich 69, 106-107, 11 NW2d 329 (1943).

—FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS—

In order to prevail on its claim that the Piku Defendants are liable for breach of fiduciary duty, Plaintiff must prove:

1. There was a fiduciary relationship between Plaintiff and Defendants that was reasonably placed giving rise to duties of trust and confidence owed by Defendants to Plaintiff,  or that one of the Defendants (Piku) was a third person who participated in the violation of fiduciary duties owed by the other Defendant (Dombrowski) to Plaintiff;

2. The fiduciary relationship was abused or a confidence was entrusted and betrayed;

3. Plaintiff was damaged by the Defendants' breach of their fiduciary duties.

As set forth above, the Piku Defendants held a position of trust and confidence with Vaughn Sports when they became Vaughn Sports agents and were given "red carpet" treatment and specific business and customer information, not ordinarily available to ordinary retail outfits.  Vaughn Sports' sponsorship of the Piku Defendants' goalie school, and the attendant expectation of Vaughn Sports that the school would diligently and honestly promote the sale of Vaughn Sports products and the legitimate modification of Vaughn Sports products augmented this agency relationship.  Their position of trust and confidence imbued the Piku Defendants with fiduciary duties of honest dealing and disclosure owed to Vaughn Sports.  They repeatedly subverted their duties by promoting exorbitantly priced and unnecessary modifications to Vaughn Sports, claiming to customers that Vaughn Sports was requiring them.  They failed to disclose material facts to Vaughn, beginning very early in their agency relationship, by conducting

15

with Dennis Dombrowski a product modification side business that had been prohibited by Vaughn Sports.   Their undisclosed and unauthorized collaboration with Vaughn Sports Production Manager Dombrowski, himself clearly a fiduciary to Vaughn Sports, renders them liable along with Dombrowski for the profits of their multi-faceted business enterprise.

**IV.    The Piku Defendants' Motion To Stike the Testimony of Expert Witness James Berger Should Be Denied**

As noted above, James Berger's report and survey were disclosed to the Piku Defendants over a year ago.   They never raised any objection to either the report or the survey, until at trial.   The survey itself merely asked participants whose product the showcased Piku products looked like.   The survey results showed high degrees of confusion of the Piku catch glove with that of Vaughn Sports (55%), high degrees of confusion of the Piku goalie pads with those of Vaughn Sports (29%), and high degrees of confusion of the Piku goalie pads with another product partially owned by Michael Vaughn, the Brian's brand goalie pads (30%).   Mr. Berger testified that the display of product graphics (but not product names) of the various manufacturer products showcased in the survey was elemental to the survey.   The Piku Defendants have not refuted this testimony.   The Piku Defendants' reference to Mr. Berger's report are of no consequence.   The report was not relied upon by Mr. Berger in interpreting the survey results, nor was it material to the survey results, nor was the report requested to be admitted into evidence, nor was it admitted into evidence.   The survey results speak for themselves.

16

**V.      The Michigan Uniform Trade Secrets Act, MCL 445.1901, et seq, Does Not Preempt Plaintiff's Unfair Competition Claims Against the Piku Defendants**

Although not raised by the Piku Defendants, the Court during Rule 50 oral argument asked whether the Plaintiff's MUTSA claim against the Piku Defendants preempts its unfair competition claim against them.  It clearly does not.  As this Court noted in its April 25, 2014 Opinion and Order Granting in Part and Denying in Part Motion to Dismiss by Defendants Piku and Piku Management Company, at pp. 23-24, "Section 8 of the Act [MUTSA] says that the law "displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret".  Mich. Comp. Laws § 445.1908(1).  But that preemption does not extend to "[o]ther civil remedies that are not based upon misappropriation of a trade secret." *Id*. §.1908(2).  "The MUTSA does not displace contractual remedies, other civil remedies that are not based upon misappropriation of a trade secret, or criminal remedies." *Lube USA Inc. v. Michigan Mfrs. Serv. Inc.*, 2009 WL 2777332, at *8 (E.D. Mich. August 27, 2009).

The allegations in Count IX have little to do with trade secrets.  "A claim for breach of fiduciary duty and breach of duty of loyalty is really the opposite of a misappropriation claim in that it is the agent or employee that withholds information or conceals activity of his own when the relationship gives rise to a duty to disclose, whereas the essence of a misappropriation claim is the theft of the employer's information." *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 623-624 (E.D. Mich. 2005).  The gravamen of Count IX is that the Piku defendants were competing against the

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

plaintiff without disclosing their activities as they should.  The plaintiff's claim in this count is not based principally on the misappropriation of trade secrets.  Count IX is therefore is not preempted by the MUTSA."

Similarly, Plaintiff's claim against the Piku Defendants is not based on the misappropriation of trade secrets.  It is based on the claims that the Piku Defendants, acting at times in concert with the Dombrowski Defendants, hatched a scheme early in the Piku-Vaughn agency relationship, to manufacture and market competing ice hockey goalie products to the buying public, i.e., to professional goalies all the way down to intermediates and youth players.  Mr. Dombrowski so testified regarding the extent of the manufacture and sale of the Defendants' product lines.  The Plaintiff's claim is also based on the Piku Defendants' improper use of the Vaughn name, through its Vaughn- branded "covers", on products that were worn by a Stanley Cup-winning goalie during the 2010-2011 NHL hockey season.  The claims are further based on the Defendants' instances of the outright covering up the Vaughn name on Vaughn products (i.e., the Exhibit 10 knee guards), the ordering through Mr. Dombrowski of the conspicuous branding of a Vaughn product with the name "WorldPro", thus wrongly associating the WorldPro name with the Vaughn name, the failure of both Dombrowski and the Piku Defendants to disclose to Vaughn Sports their side business of making, for profit, Vaughn-prohibited equipment modifications, and the manufacture and sale to the public of competing ice hockey goalie products that were based on Vaughn patterns and that were confusing to the public. Plaintiff's claims against the Defendants for misappropriation of confidential information and trade secrets, i.e., the information set forth in Plaintiff's Master Inventory Book, its

18

Job Detail Book (i.e., its pds sheets ("product design sheets") setting forth detailed step by step die and product pattern information), its Vendor/Supplier Book, and its specially sourced raw materials, are separately actionable under MUTSA.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Honorable Court DENY the Piku Defendants' Motion Made Pursuant to Fed. R. Div. Proc. 50 and the Piku Defendants' Motion to Strike.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

By: /s/ Brian J. Renaud
Brian J. Renaud (P 34987)
Attorneys for Plaintiff
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
(248) 539-9900
BRenaud@FosterSwift.com

Dated:  September 7, 2014

—FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS—

## DECLARATION OF SERVICE

Christine M. Learst declares that the attached (1) Plaintiff's Responses to the Piku Defendants' Motion Made Pursuant to Fed. R. Civ. Proc. 50 and the Piku Defednats' Motion to Strike, including Brief in Support; and (2) this Declaration of Service, were served on:

Arnold S. Weintraub, Esquire
The Weintraub Group, P.L.C.
24901 Northwestern Highway, Suite 311
Southfield, MI 48075;

Elana H. Gloetzner, Esq.
Elana Weintraub Gloetzner PLC
24901 Northwestern Highway, Suite 311
Southfield, MI 48075;

and

Daryle Salisbury, Esquire
24191 Westmont Court
Novi, MI 48374

by e-filing same with the United States District Court for the Eastern District of Michigan, Southern Division using the CM/ECF Filing System on September 7, 2014.

"I declare that the statements above are true to the best of my information, knowledge, and belief."

/s/ Christine M. Learst
Foster, Swift, Collins & Smith, P.C.
32300 Northwestern Highway, Suite 230
Farmington Hills, MI 48334
(248) 539-9900
clearst@fosterswift.com