UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE VAUGHN CUSTOM SPORTS, INC.,

        Plaintiff,                    Case Number 12-13083
                                                Honorable David M. Lawson

v.

CHRYSTEM "CHRIS" PIKU, PIKU
MANAGEMENT CO. d/b/a WORLDPRO
GOALTENDING—USA, DENNIS
DOMBROWSKI, and FACTORY MODIFICATION
AND DESIGN, LLC,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART
## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

This matter is before the Court on the plaintiff's motion for attorney's fees after prevailing at trial on its claim for false designation of origin and four of the five state law claims presented to the jury. The Court previously determined that this was an exceptional case that entitled the plaintiff to attorney's fees under 15 U.S.C. § 1117(a), but ordered counsel for the plaintiff to submit a supplemental brief that explicitly identified the hours spent litigating the successful claim under the Lanham Act, which is the only claim for which attorney's fees could be recovered in this case. The plaintiff has submitted a supplemental brief that includes 150 pages of billing records in support of its request. Those records identify only *one* entry describing counsel's efforts to prosecute the false-designation-of-origin claim.

In its complaint, the plaintiff initially identified four claims based on the Lanham Act: trade dress infringement (count I), trademark dilution and false promotion of goods (count II), false designation of origin (count III), and trade dress dilution (count IV). However, three of those counts

were dismissed before trial on motion. The amended complaint also set out ten state law claims. Therefore, only one of the fourteen original claims permits an award of attorney's fees.

The Court is not able to determine with any degree of precision — or even generally — the amount of time spent by counsel on the claim for which attorney's fees can be awarded. But based on the "overall sense of [the] suit," the records that have been submitted, the observation of the trial (including work performed with witnesses who eventually were disallowed), and attempting "to do rough justice," *Fox v. Nice*, --- U.S. ---, 131 S. Ct. 2205, 2216 (2011), the Court finds that 15 percent of the time expended by plaintiff's counsel can be attributed fairly to the federal claim for which fees may be shifted. Applying the lodestar method, that translates to $121,630.50, which is awarded to the plaintiff against the defendants jointly and severally.

I.

On September 10, 2014, a jury returned a verdict in favor of plaintiff Mike Vaughn Custom Sports, Inc. on its surviving claim under the Lanham Act, 15 U.S.C. § 1125(a), and four of its five state law claims. Total damages were awarded in the amount of $322,200 against the defendants. Thereafter, the plaintiff filed a motion seeking nearly $1 million in attorney's fees and expenses — more than three times the amount of the damages awarded. The Court heard oral argument on the attorney's fee motion on May 19, 2015, and announced its decision from the bench. The Court found that the case was an "exceptional" case that qualified for attorney fees under 15 U.S.C. § 1117(a) because of the defendants' unreasonable conduct in the litigation and efforts to pass off the plaintiff's products as their own. *See Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998) (finding that it "could not agree more" that a case is generally exceptional if a defendant "pass[ed] off a

product or service as another seller's better established one, or some other deliberate theft of a marketholder's goodwill.").

The Court could not determine the amount of those fees, however, because the plaintiff failed to identify and apportion the time that counsel spent litigating its claim under the Lanham Act, the only claim for which counsel was entitled to attorney's fees. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) ("[U]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act."). Therefore, the Court ordered the plaintiff to submit a supplemental brief in support of its fee request. The plaintiff has submitted a supplemental brief, reducing its request to $825,892.50, and attached over 150 pages of billing records. But those records do not identify the hours the plaintiff spent litigating its false-designation-of-origin claim. The defendants have filed responses objecting to the amount requested. The Court has reviewed the parties' submissions and, for the reasons that follow, will reduce the plaintiff's award to $121,630.50.

II.

A.

In determining a "reasonable" fee under section 1117(a), the Court must first determine the "lodestar" amount (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee) and then reduce or augment that amount by considering other case-specific factors. *Hensely v. Eckerhart*, 461 U.S. 424, 433-37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). "The party seeking attorney's fees 'bears the burden of establishing entitlement to an award and documenting the

-3-

appropriate hours expended and hourly rates.'" *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437). "The key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Inwalle v. Reliance Med. Prodcus., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). The trial judge must "question the time, expertise, and professional work of [the] lawyer" applying for fees. *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980). And, in calculating the appropriate award, "the district court is required to give a clear explanation," as to its reasoning. *Moore v. Freeman,* 355 F.3d 558, 566 (6th Cir. 2004).

However, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 131 S. Ct. at 2216. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Ibid.* "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ibid.* Thus, "there is no requirement . . . that district courts identify and justify each disallowed hour." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citing *New York State Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). "Nor is there any requirement that district courts announce what hours are permitted for each legal task." *Ibid.* Instead, the Supreme Court has held that "a concise but clear explanation" of a district court's reasons for a fee award, *Hensley*, 461 U.S. at 437, may include findings of "unnecessary, unreasonable or unproductive time," that "the time spent on the particular activity was 'excessive,'" or that a less amount of time was "reasonable," *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 554 n.2, 566-67 (1986).

Counsel for the plaintiff originally requested the Court to award $991,103.50 in attorney's fees for 3,235 hours of work. Plaintiff's attorney Brian Renaud, reduced his request to $825,892.50 for 2,685 hours of work after the Court ordered him to limit it to the hours spent litigating the plaintiff's sole successful claim under the Lanham Act. Counsel for the plaintiff now represents that he spent more than 83 percent of his time on the claim for false designation of origin even though it is only one of the 14 claims in the amended complaint. However, the supporting documents — consisting of more than 150 pages of invoices — do not support Mr. Renaud's assertion. Instead, the invoices suggest that most of the time was spent on all of the claims in general, and much time was devoted to the state law claims and the dismissed federal claims. "Under 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act." *U.S. Structures*, 130 F.3d at 1193. The Court *may* award fees for non-Lanham Act claims, but only if "the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000).

Mr. Renaud does not argue that it was impossible to apportion the hours spent on each claim. Nor could he, since many of the billing records do just that. *See, e.g.*, 1/10/2012 ("Prepare for and meet with client regarding trade secrets misappropriation claims"); 1/11/2012 ("Evaluate U.S. federal cases regarding current status of trade dress law and basis for claims of design violations."); 02/09/12 ("Further evaluation of trade dress claims"); 02/28/12 ("Meeting to discuss Vaughn litigation strategy and evaluate Lanham Act trade dress facts and legal issues"). But, after thoroughly reviewing the billing records, the Court could locate only *one* entry specifically describing his efforts to prosecute the false-designation-of-origin claim. *See* 07/31/12 ("Examine trade dress cases for pleadings and 18 USC 1125 for false designation and unfair competition.").

Curiously, the plaintiff does not seek compensation for that entry (based on the highlighted submissions). Instead, Mr. Renaud seeks compensation for general time spent "review[ing] [a] deposition transcript in preparation for hearing," a "telephone conference and correspondence with client," and "attention to expert witness retention and deposition preparation matters," among other activities, without specifying whether or how those activities relate to the claim under the Lanham Act. *See, e.g.*, 4/12/13, 4/17/13, 5/6/2013.

Much of the plaintiff's billing records are unacceptably vague. A court may make deductions to the requested attorney fees if "'[t]he time records maintained by the attorneys . . . [make] no mention . . . of the subject matter of a meeting, telephone conference or the work performed during hours billed.'" *Fabi Const. Co., Inc. v. Secretary of Labor*, 541 F.3d 407, 411 (D.C. Cir. 2008) (quoting *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990)). The plaintiff's billing records contain numerous entries for telephone conferences, discovery matters, and correspondence with experts that do not specify whether they concerned the false-designation-of-origin claim. *See, e.g.*, 7/26/12 ("Work on discovery materials and agenda"); 1/29/13 ("Review discovery issues"); 1/31/13 ("Prepare correspondence with client"); 02/17/14 ("Attention to court filings"); 03/05/14 ("Correspondence and conference call with client"); 3/14/13 ("Review discovery strategies"); 03/21/14 ("Attention to trial preparation matters"); 4/28/14 ("Conference with Brian Renaud and Mike Blum"); 4/29/14 ("Attend meeting with Mike Vaughn"); 07/01/14 ("Receipt of emails from and to Weintraub"); 07/25/14 ("Conduct expert witness preparation session"); 07/30/14 ("Attend meeting with client"). The Court cannot determine from these and other records whether counsel's activities were focused on the only claim for which the plaintiff is entitled to attorney fees. *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) ("[T]ime records may be

too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like. In that event, the court may either discount or disallow those hours.").

Even if the billing records do not specify his efforts, Mr. Renaud implies that most of his time was spent litigating the false-designation-of-origin claim. But that is unlikely. Discovery during the case focused largely on the dismissed counts for trade dress infringement. Yet counsel for the plaintiff attributes nearly *all* of his efforts during discovery to the false-designation-of-origin claim. The records do not substantiate that assertion. *See, e.g.*, 10/16/2012 ("Formulate requests for admissions based on defendant's answer to complaint."); 11/14/2012 ("Begin preparation of discovery responses"); 12/03/12 ("Several items of correspondence with opposing counsel regarding discovery requests and responses"); 12/06/12 ("Continue work on discovery requests"); 12/07/2012 ("Work on discovery plan"). The emphasis placed during pretrial motion practice on the eventually-dismissed federal claims renders unlikely the notion that discovery was focused entirely on the false-designation-of-origin claim. Moreover, there were 13 other counts still in play in this case at the time.

The same problems are found in the plaintiff's request for fees for trial preparation. Counsel seeks reimbursement for *all* of his time preparing for trial, as if false designation of origin were the only count in this case. *See, e.g.*, 08/09/2014 ("Prepare for trial"), 08/11/2014 ("Prepare for trial"), 08/12/2014 ("Prepare for trial"), 08/13/2014 ("Prepare for trial"), 08/14/2014 ("Prepare for trial"). And he seeks reimbursement for nearly all of his work with experts, even though two of his experts focused on the dismissed count for trade dress infringement. *See, e.g.*, 12/13/2012 ("Further attention to expert witness retention matters"); 01/02/2013 ("Attention to expert witness retention");

01/08/2013 ("Conduct further expert witness contacts."); 07/24/2014 ("Review reports and preparation for conference calls with experts James Berger and Charles Glasscock"); 08/06/2014 ("Conduct conference call with Chuck Glasscock"). The billing records do not lend support to the idea that most of counsel's time was devoted to the false-designation-of-origin claim.

If it is difficult to apportion plaintiff's counsel's time, it is not because the "claims are so intertwined with the prevailing Lanham Act claim[] that it is impossible to differentiate between work done on the different claims." *See Gracie*, 217 F.3d at 1069. Counsel cannot apportion his time because his billing records are insufficient. The distinction matters. In the former situation, counsel may recover fees for non-Lanham Act claims. But counsel may not recover fees in the latter situation because, as here, the problem is the lack of detail and foresight in composing the billing records. In fact, it appears that plaintiff's counsel's firm devoted over 33 hours to researching attorney fees *after* the jury verdict, and eventually trying to untangle the bills. *See, e.g.*, 09/15/2014; 09/16/2014; 09/17/2014; 10/02/2014; 10/10/2014; 10/16/2014; 11/18/2014; 11/25/2014; 11/26/2014.

Nonetheless, however difficult, the Court has a "duty to make some attempt to adjust the fee award" to reflect a rough apportionment. *See Gracie*, 217 F.3d at 1070. Courts have held that one acceptable method of apportionment is to reduce the total fee amount by a percentage that represents the work on non-recoverable claims. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (finding acceptable district court award that reduced attorney fees sought by 26 percent); *see also Safeworks, LLC v. Teupen Am., LLC*, No. C08-12197, 2010 WL 3033711, at *3 (W.D. Wash. July 29, 2010) ("Reducing a total attorney fee amount by a percentage that represents work on non-Lanham Act claims . . . is one method courts have used to apportion attorneys' fees"); *Hensley*, 461 U.S. at 438 (finding that the district court did not err in reducing the hours by 30 percent to account

for attorney's inexperience and failure to keep contemporaneous time records). The Court will adopt that approach here. The false-designation-of-origin claim represents seven percent of the claims in the amended complaint. But after observing the effort at trial and before devoted to that claim, reducing the fees award to seven percent of the time is too severe a cut. Six claims went to the jury against both sets of defendants. The one successful federal claim from that group of claims represents approximately 17 percent of the total. However, it also appears that the vast majority of the pretrial work in the case was spent on the claims for trade dress infringement, trademark dilution, and trade dress dilution, which did not survive the motion to dismiss. Therefore, the Court believes that an acceptable blend yields a fractional adjustment of 15 percent as an allowance for the time spent on the claim for which attorney's fees may be awarded. That amounts to 402.75 hours to reflect the time the plaintiff reasonably spent litigating the false-designation-of-origin claim. *See Mares*, 801 F.2d at 1203 (holding that "a general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method" to determine attorney fees).

This adjustment is supported by the trial testimony, discovery (as reflected on the docket and reported by the parties), and court filings in the case. The evidence against the defendants for false designation of origin was relatively straight-forward. The plaintiff alleged that the defendants worked together to steal the plaintiff's designs and raw materials in order to create an unfair advantage when they established a competing business. The primary evidence of false designation of origin involved Mr. Piku's own statements that appeared in an *InGoal Magazine* article and interview, as well as testimony from Mike Vaughn that the defendants stole Vaughn Sports's raw materials and product designs and passed them off as their own. The plaintiff did not require

extensive discovery to establish the defendants' liability for false designation of origin: Piku implicated himself during the magazine interview.

The plaintiff's litigation strategy caused it to frame the case as a trade dress, trade dress dilution, and trademark case. Had it prevailed on all those theories, no doubt a different attorney's fee calculus would be warranted. On the record before the Court, however, the adjustment to the time reported is necessary to conform the award to the law.

B.

The second component of the lodestar is the hourly rate. *Hensely*, 461 U.S. at 433. Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). Mr. Renaud states in his affidavit that Bruce VandeVusse's and Michael Blum's rates were $325 per hour, his paralegal's rate was $135 per hour, and his rate was $370 per hour, which he voluntarily reduced on two occasions to $325 per hour and $275 per hour. Renaud Aff. at 4. Mr. Renaud states that the blended hourly rate for all of the legal work performed was $302 per hour.

The defendants do not object to the hourly rates that the attorneys charged and the Court finds that the rates can be justified by reference to the prevailing market rates in the community. Therefore, the Court will use a rate of $302 per hour to calculate the plaintiff's attorney fees. After calculating the lodestar, the Court will award the plaintiff $121,630.50 based on 402.75 hours of time spent litigating the false-designation-of-origin claim.

The plaintiff has not suggested, and the Court does not find, that there are other case-specific factors that require an adjustment to the total yielded by the lodestar.

C.

Lastly, defendant Factory Modification and Design, LLC does not believe that it should be held liable for any attorney fees because Piku's interview with *InGoal Magazine* — which formed the basis for the false-designation-of-origin claim — occurred before its formation date.

The defendant essentially asks the Court to revisit the jury's verdict, in which it was found liable for false designation of origin. Those arguments should have been raised in a motion for summary judgment under Federal Rule of Civil Procedure 56, or a motion for judgment as a matter of law under Rule 50. They are not properly before the Court here.

Moreover, although the primary evidence of false designation of origin may have been Piku's interview with *InGoal Magazine*, it was not the only evidence. The jury also heard testimony from Mike Vaughn that the defendants used Vaughn Sports's raw materials and product designs to pass Vaughn products off as their own and that Worldpro misrepresented its affiliation with Vaughn Sports by embroidering the Worldpro name on Vaughn Sports products. The Court will not disturb the jury's verdict at this late stage.

Factory Modification and Design also argues that the Court should apportion attorney fees among the individual defendants. Apportionment of attorney fees based on each defendant's relative liability is not mandatory. *Ulin v. Lovell's Antique Gallery*, 528 F. App'x 748, 751 (9th Cir. 2013). Instead, courts have "prescribed apportionment of attorney's fees when the *time expended* by the plaintiff in pursing each defendant was grossly unequal." *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991) (citations omitted).

The defendant argues that the plaintiff did not add Factory Modification and Design as a defendant until it had already expended several hundred thousand dollars litigating the case. Fair

-11-

enough. But the jury found that defendant jointly and severally liable with Dennis Dombrowski for false designation of origin. And Factory Modification and Design agreed to a jury form that would hold it jointly and severally liable with Mr. Dombrowski for any damages. The Court will not revisit that issue.

### III.

The Court finds that the plaintiff's billing records are inadequate to support the plaintiff's request for $825,892.50 in attorney's fees because they do not reflect the hours spent litigating the false-designation-of-origin claim. No other evidence presented by the plaintiff or otherwise before the Court fills in the gaps. Therefore, the Court will adjust the attorney's fees to 15 percent of the amount requested. The Court will award the plaintiff $121,630.50 for 402.75 hours of services under 15 U.S.C. § 1117(a). Defendants Piku Management Co. d/b/a Worldpro Goaltending-USA, and Factory Modification And Design, LLC, are jointly and severally liable. Defendants Dennis Dombrowski and Chrystem "Chris" Piku sought bankruptcy protection after the judgment was entered, and the case is administratively closed as to them, only. This decision, therefore, does not apply to them at present.

Accordingly, it is **ORDERED** that the motion for attorney fees [dkt. #113] is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff is entitled to attorney fees in the amount of $121,630.50, jointly and severally against defendants Piku Management Co. d/b/a Worldpro Goaltending-USA, and Factory Modification And Design, LLC.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Dated: July 30, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2015.

                              s/Susan Pinkowski
                              SUSAN PINKOWSKI